IN THE UNITED STATES DISTRICT COURT

FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| vs. | : | Docket No.: 1:24CR00283 |
| BRAYAN YAEL GARCIA VAZQUEZ | : | |

### BRAYAN YAEL GARCIA VAZQUEZ'S SENTENCING MEMORANDUM

Mr. Garcia Vazquez, by and through undersigned counsel, submits this Sentencing Memorandum to assist the Court in dispatching its constitutional and statutory obligation to impose a sentence sufficient, but not greater than necessary, to meet the goals of sentencing.

Mr. Garcia Vazquez accepts full responsibility and is extremely remorseful for his criminal actions. Nothing in the following memorandum is intended to excuse or assign blame for Mr. Garcia Vazquez's actions. Rather, the following is only presented to give a fuller picture of who Mr. Garcia Vazquez is beyond his criminal acts and to assist the Court in reaching its decision.

### I.       INTRODUCTION

The Court, when attempting to determine the appropriate sentence for anyone convicted of a Federal crime "*shall*" impose a sentence sufficient, but not greater than necessary, to comply with the purposes set forth in § 3553(a).[1]  Undersigned counsel, on behalf of Mr. Garcia Vazquez, seeks only a sentence that will provide the same.

In this case, we ask nothing more than that this Court, pursuant to the parsimony provision,

---

[1] Section 3553(a) provides in part that the court shall impose a sentence sufficient, but not greater than necessary to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; to afford adequate deterrence to criminal conduct; to protect the public from further crimes of the defendant; and to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner.

sentence Mr. Garcia Vazquez far below the guidelines range of 360 months to life.

## II.    FACTUAL BACKGROUND

As Mr. Garcia Vazquez has accepted responsibility and pled guilty, the allegations set forth during his plea hearing are adopted and incorporated herein.

## III.    ANALYSIS

Pursuant to statutory mandate, when sentencing a defendant, district courts must impose a sentence that is "sufficient" but not greater than necessary to comply with purposes of sentencing. *United States v. Olhovsky*, 562 F.3d 530, 547-548 (3d Cir. 2009) (quoting 18 U.S.C. §3553 (2006)); *but see United States v. Dragon*, 471 F.3d 501, 506 (3d Cir. 2006) (holding that parsimony provision does not require district judges to routinely state that imposed sentence is necessary to achieve purposes enumerated in § 3553(a)). To comply with this mandate, the Third Circuit Court of Appeals directs District Courts to first consider the advisory sentencing guidelines, specifically stating:

> "[T]he guidelines should be the starting point and the initial benchmark in determining the appropriate sentence." *Gall v. United States*, ___ U.S. ___, 128 S.Ct. 586, 596, 169 L.Ed.2d 445 (2007); *see also, United States v. Golf*, 501 F.3d 250-257 (3d Cir. 2007) ("because the guidelines reflect the collective wisdom of the various institutions, they deserve careful consideration in each case . . . . [T]hey cannot be ignored.") Prior to, but consistent with *Gall*, this Court set forth a three part process for determining a sentence. Under *United States v. Gunther*, district courts must begin with a correct calculation and reason from that starting point to the appropriate sentence based on the facts of the individual case and the exercise of the district court's discretion pursuant to 18 U.S.C. §3553. *United States v. Gunther*, 462 F.3d 237, 247 (3d Cir. 2006); *see also, United States v. Jackson*, 467 F.3d 834, 838, n.4 (3d Cir. 2006) ("we require that the entirety of the guidelines calculation be done correctly"). Therefore, in accordance with the dictate of the Supreme Court and this Court, a district court errs when it fails to calculate the guideline range correctly or begins from an improper guideline range in determining an appropriate sentence.

*United States v. Smalley*, 517 F.3d 208, 211 (3d Cir. 2008). Even though the Court is required to properly calculate and consider the sentencing guidelines, they are only one of a number of factors to be considered in dispatch of this Court's obligation to impose a sentence minimally sufficient, but not greater than necessary to meet the goals of sentencing. In fact, the Supreme Court has stated that district courts may not consider the guidelines as presumptively reasonable. *Nelson v. United States,* 555 U.S. 350, 352 (2009) (*per curiam*) ("Our cases do not allow a sentencing court to presume that a sentence within the applicable Guidelines range is reasonable."); *see also id.* ("The Guidelines are not only *not mandatory* on sentencing courts; they are also not to be *presumed* reasonable.").

In *Gunther*, the Third Circuit first articulated the three-step approach to sentencing referenced in the above-quoted language from *Smalley.* Specifically, the Third Circuit stated:

> Our post-*Booker* precedent instructs district courts to follow a three-step sentencing process.
> * * *
> 1. Courts must continue to calculate a defendant's sentencing guidelines precisely as they would have before *Booker*;
>
> 2. In doing so, they must formally rule on motions of both parties and state on the record whether they are granting a departure and how the departure affects the guideline calculation and take into account our circuit's pre-*Booker* case law which continues to have advisory force; and
>
> 3. Finally, they are required to "exercise" their discretion by considering relevant §3553(a) factors in the sentence they impose regardless of whether it varies from the sentence calculated under the guidelines.

*Id.* at 247. The Court of Appeals has repeatedly restated the applicability of this three-step process. *See, e.g., United States v. Olhovsky*, 562 F.3d 530, 546 (3d Cir. 2009). In exercising its discretion, this Court is free to consider any and all factors that may be relevant to its sentencing decision. *See Irizarry v. United States*, 553 U.S. 708, 714-15 (2008) ("Although the Guidelines, as the

"starting point and the initial benchmark," continue to play a role in the sentencing determination, *see Gall*, 552 U.S., at 49, 128 S.Ct. 586, there is no longer a limit comparable to the one in *Burns* on variances from Guidelines ranges that a district court may find justified under the sentencing factors set forth in 18 U.S.C. § 3553(a) (2000 ed. and Supp. V).").

In making the individual assessment of the facts and circumstances of Mr. Garcia Vazquez's case, there is no limitation upon the information concerning Mr. Garcia Vazquez's background, character, and conduct which this Court may receive and consider for the purpose of imposing an appropriate sentence.  18 U.S.C. § 3661 (2006); *see also Pepper v. United States*, 562 U.S. 476 (2011) (same).

Finally, the Court of Appeals has made it clear – as recently as the first week of May 2024 – that District Courts must engage in independent review of the 3553(a) factors by "disclos[ing] meaningful consideration of the relevant statutory factors and the exercise of independent judgment, based on a weighing of the relevant factors, in arriving at a final sentence.'" *United States v. Kluger*, 722 F.3d 549, 566 (3d Cir. 2013) (quoting *United States v. Grier*, 475 F.3d 556, 571–72 (3d Cir. 2007) (en banc)). In other words, step three requires "a true, considered exercise of discretion." *United States v. Friedman*, 658 F.3d 342, 359 (3d Cir. 2011) (quoting *United States v. Jackson*, 467 F.3d 834, 841 (3d Cir. 2006)). An exercise of discretion tainted by an erroneous legal conclusion—including a misinterpretation of the Guidelines—results in procedural error requiring resentencing unless the error is harmless. *See United States v. Wise*, 515 F.3d 207, 217 (3d Cir. 2008); *United States v. Zabielski*, 711 F.3d 381, 386 (3d Cir. 2013); *see United States v. Cora-Alicea,* 100 F.4th 478, 482 (3d Cir. 2024).

4

## IV.    OBJECTIONS [2]

Mr. Garcia Vazquez maintains his objections as outlined in his October 1st, 2025, letter to U.S. Probation. Rather than re-type these arguments and have this Court read two sets of argument sections, Mr. Garcia Vazquez incorporates his letter which is attached at the end of the Final PSR.

## V.    REASONS FOR VARIANCE

### (A)    A Variance below the guidelines is sufficient to satisfy § 3553

"It has been uniform and constant in the federal judicial tradition for the sentencing judge to consider every convicted person as an individual and every case as a unique study in the human failings that sometimes mitigate, sometimes magnify, the crime and the punishment to ensue." *Koon v. United States,* 518 U.S. 81, 113 (1996). At least as early as 1949, the United States Supreme Court has said that "the punishment should fit the offender and not merely the crime." *Williams v. New York,* 337 U.S. 241,247 (1949); see also *Pennsylvania ex rel. Sullivan v. Ashe*, 302 U. S. 51, 55 (1937) ("For the determination of sentences, justice generally requires consideration of more than the particular acts by which the crime was committed and that there be taken into account the circumstances of the offense together with the character and propensities of the offender").

First, the character letters in support of Mr. Garcia Vazquez indicate he is extremely well regarded by his family and community.  As evidenced by the thirteen (13) character letters submitted along with this memorandum, those who know Mr. Garcia Vazquez value him as a son,

---

[2] Mr. Garcia Vazquez maintains his objections as outlined in his October 1st, 2025 letter to U.S. probation which is attached at the end of the Final PSR.

friend, and community member.[3]  In further reviewing these letters, it becomes abundantly clear that Mr. Garcia Vazquez is an exceptionally selfless, driven, and compassionate individual.

In a letter from Maribel Vazquez, Mr. Garcia Vazquez's mother, she shares how Mr. Garcia Vazquez was raised in a stable, faith-centered household by parents who immigrated to this country to build a better future; he grew up as a respectful, quiet young man who never used drugs or alcohol. His mother, who knows him most intimately, attests that he has never been involved in any trouble before and describes him as a passive, respectful, and hardworking son, brother, and cousin who is deeply remorseful for his actions. She firmly believes that this conduct is entirely inconsistent with the person he has always been and asks the Court for mercy and a second chance, expressing her sincere confidence that he will never find himself before the justice system again.

In letters from other family members, like Juan Vázquez Pérez and David Lopez, it becomes apparent that Mr. Garcia Vazquez is a hardworking and respectful young man who cares deeply about his family. He has consistently maintained stable employment and co-founded a family business several years ago. Mr. Garcia Vazquez has gone beyond simply supporting himself as he actively contributes financially to his mother's household, shouldering responsibility for his family's well-being without hesitation. This selflessness speaks to the core of who Mr. Garcia Vazquez is: someone who puts his family first and works hard every day to ensure they are provided for. His commitment to honest, steady work is not just a habit but a reflection of deeply held values rooted in family loyalty and personal responsibility. Indeed, as Mr. Lopez shares "[Mr. Garcia Vazquez's] compassion and dedication to his loved ones truly define his character."

In reading these letters from those close to Mr. Garcia Vazquez, it becomes apparent that while Mr. Garcia Vazquez has made a terrible decision, his character will position him to

---

[3] *See* Exhibit D-1 which includes thirteen (13) character letters submitted for the within memorandum.

successfully reintegrate into society. Surely, Mr. Garcia Vazquez will ensure his present conduct remains an isolated chapter rather than a defining one.

In sum, Mr. Garcia Vazquez prays that the Court will consider his background and community support when fashioning a sentence that is sufficient, but not greater than necessary to satisfy the goals of § 3553(a).

### (B) The Enhancements as Applied Are Arbitrary, Disproportionate, and Untethered from the Conduct They Were Designed to Address

Even if this Court finds that each enhancement applies as a matter of law, it retains broad discretion to impose a sentence below the advisory Guidelines range. *United States v. Booker*, 543 U.S. 220, 245–46 (2005) (rendering the Guidelines 'effectively advisory' and requiring courts to impose a sentence 'sufficient, but not greater than necessary' under 18 U.S.C. § 3553(a)). Indeed, the Supreme Court has made clear that a sentencing court may vary from the Guidelines based not only on the individual circumstances of the case, but also on policy disagreements with the Guidelines themselves — including where a particular Guideline provision fails to reflect the Sentencing Commission's characteristic institutional role of empirical analysis. *Kimbrough v. United States*, 552 U.S. 85, 109–10 (2007). Thus, even assuming the enhancements are correctly calculated, this Court should exercise its independent judgment under § 3553(a) and conclude that a within-Guidelines sentence for Mr. Garcia Vazquez would be far greater than necessary to achieve the purposes of sentencing.

### i) Use of Computer Service

The §2G2.1(b)(6) enhancement for use of a computer to solicit or persuade a minor to engage in sexually explicit conduct no longer serves its intended purpose of distinguishing more culpable offenders from the heartland of production cases. In 2026, cell phones and internet-connected devices are so pervasive that virtually any production offense involving a non-custodial

defendant will, by definition, involve a computer or interactive computer service. The enhancement functions not as a meaningful measure of heightened culpability, but as an automatic penalty imposed on the modern means of communication which is a result that is both arbitrary and at odds with the individualized sentencing that § 3553(a) demands.

The Commission's own data demonstrates this point. In its 2021 report on federal sentencing of child pornography production offenses, the Commission documented the inverse relationship between the application of the caregiver enhancement under §2G2.1(b)(5) and the computer-use enhancement under §2G2.1(b)(6). As production offenses have increasingly migrated online, the proportion of offenders receiving the caregiver enhancement fell from 62.0% in fiscal year 2010 to 47.5% in fiscal year 2019, while the proportion receiving the computer-use or misrepresentation enhancement rose sharply — from 19.5% to 45.7% over the same period. *See* United States Sentencing Comm'n, Federal Sentencing of Child Pornography: Production Offenses at pp. 20 (Oct. 2021).

This inverse relationship reveals the structural deficiency in the current Guidelines scheme. An individual who exercises custodial authority over a minor — a parent, teacher, or coach — can commit a production offense without ever using a computer; the victim is already within that individual's physical control. The accused then receives the (b)(5) caregiver enhancement but avoids the (b)(6) computer enhancement. An individual who lacks any such authority, however, has no practical means of committing the offense except through a computer or cell phone. An individual in this circumstance thus receives the (b)(6) enhancement as an inevitable feature of the offense, not as a reflection of any heightened moral culpability. The enhancement operates as a *de facto* penalty for not being a caregiver - punishing that individual for the very absence of the custodial relationship that would otherwise trigger a different enhancement. This is precisely the

kind of mechanical, non-empirical result that the Supreme Court recognized in *Kimbrough* as warranting a variance.

When an enhancement captures the majority of the accused sentenced under a given guideline, it ceases to differentiate among offenders and instead inflates the baseline for nearly everyone — undermining the parsimony principle of § 3553(a). *See Gall v. United States*, 552 U.S. 38, 49–50 (2007). Mr. Garcia Vazquez respectfully submits that this Court should account for the arbitrary operation of the (b)(6) enhancement in exercising its discretion under § 3553(a), and that the advisory Guidelines range overstates the sentence necessary to achieve the statutory purposes of sentencing.

### ii. Distribution

Section 2G2.1(b)(3) of the Guidelines provides for a two-level enhancement to the base offense level of 32 for production (or attempted production) of child pornography if "the offense involved distribution." The congressional findings underlying 18 U.S.C. § 2251 make clear that the harms associated with distribution are proliferation harms - the continued circulation of images to third parties, the fueling of demand for exploitative material, and the renewed violation of the victim's privacy each time a new person views the images. As Congress found when enacting the Child Pornography Prevention Act of 1996, Pub. L. No. 104-208, § 121, 110 Stat. 3009 (1996):

> "(2) where children are used in its production, child pornography permanently records the victim's abuse, and its continued existence causes the child victims of sexual abuse continuing harm by haunting those children in future years;

> "(7) the creation or distribution of child pornography which includes an image of a recognizable minor invades the child's privacy and reputational interests, since images that are created showing a child's face or other identifiable feature on a body engaging in sexually explicit conduct can haunt the minor for years to come;

"(10)(A) the existence of and traffic in child pornographic images creates the potential for many types of harm in the community and presents a clear and present danger to all children; and

"(B) it inflames the desires of child molesters, pedophiles, and child pornographers who prey on children, thereby increasing the creation and distribution of child pornography and the sexual abuse and exploitation of actual children who are victimized as a result of the existence and use of these materials;

110 Stat. at 3009-26,-27(codified at 18 U.S.C. § 2251 note); *see also* Effective Child Pornography Prosecution Act of 2007, Pub. L. No. 110-358, § 102(3), 122 Stat. 4001 ("Child pornography is a permanent record of a child's abuse and the distribution of child pornography images revictimizes the child each time the image is viewed.") In the instant matter, Mr. Garcia Vazquez has received the distribution enhancement due to Mr. Garcia Vazquez sending the minor the same video used to substantiate the sole count under 18 U.S.C. 2251. *See* PSR ¶ 8. Mr. Garcia Vazquez submits that the harms articulated by Congress, cited *supra*, are not present when the only distribution consists of transmitting material back to the depicted minor via private messaging.

The mechanical application of the § 2G2.1(b)(3) distribution enhancement in this case exemplifies the very concern the Second Circuit identified in *United States v. Dorvee*. 616 F.3d 174 (2d Cir. 2010). In *Dorvee*, the court warned that the child pornography sentencing enhancements, "unless applied with great care, can lead to unreasonable sentences that are inconsistent with what § 3553 requires." *Id*. at 184. The court found that when enhancements "apply in nearly all cases," they cease to serve their purpose of distinguishing among offenders and instead "result[] in virtually no distinction between the sentences for defendants like Dorvee, and the sentences for the most dangerous offenders who, for example, distribute child pornography for pecuniary gain and who fall in higher criminal history categories." *Id*. at 186-87.

10

Here, applying the (b)(3) distribution enhancement based solely on the transmission of material back to the depicted complainant — without any third-party dissemination, market participation, or proliferation of exploitative material — treats Mr. Garcia Vazquez identically to defendants who distributed child sexual abuse material to vast online networks for pecuniary gain. This is precisely the kind of "unwarranted similarit[y]" that *Dorvee* and *Gall* instruct sentencing courts to guard against, and it is precisely the kind of mechanical, indiscriminate enhancement application that produces sentences "greater than necessary" in violation of the parsimony mandate of 18 U.S.C. § 3553(a).

### iii. Pattern of Activity Enhancement

Section 4B1.5(b)(1) "applies to one who 'engage[s] in a pattern of activity involving prohibited sexual conduct,' so long as the defendant's present offense is a covered sex crime and the defendant has neither been previously convicted of a sex offense nor qualifies for a career offender enhancement under § 4B1.1." The fundamental problem with applying this five-level enhancement based on two consecutive, isolated days of sexual conduct is that it creates an unwarranted similarity between Mr. Garcia Vazquez and defendants whose conduct genuinely reflects a pattern. [4] Mr. Garcia Vazquez will receive the same enhancement as offenders who: have abused multiple victims over months or years, offenders with prior unadjudicated sexual offenses spanning decades, or offenders who have engaged in systematic, escalating exploitation of minors. The enhancement draws no distinction whatsoever between these categorically different levels of culpability.[5] This is precisely the type of result the Second Circuit condemned

---

4 *See* PSR ¶ 7.

5 The arbitrariness of the enhancement's application here is further illustrated by what it captures versus what it misses. An individual who commits a prolonged acts of sexual exploitation lasting an entire day receives no pattern enhancement because the conduct occurred on one "occasion." An individual who

in *Dorvee*, where the court held that enhancements producing "virtually no distinction between the sentences for defendants like [Appellant], and the sentences for the most dangerous offenders" are "fundamentally incompatible with § 3553(a)." 616 F.3d at 186-187. While Mr. Garcia Vazquez does not dispute that the offense conduct occurred on two calendar days, he respectfully submits that two consecutive days of prohibited conduct- standing alone, involving one complainant, within the course of what is effectively a single behavioral episode-does not constitute the type of "pattern" that § 4B1.5 was designed to capture.

For all of the foregoing reasons, Mr. Garcia Vazquez respectfully requests that this Court exercise its broad discretion under 18 U.S.C. § 3553(a) to vary downward from the advisory Guidelines range to account for the enhancement's disproportionate impact.

### iv. Pennsylvania's Guidelines for Rape of a Child Provide Context as to the Severity of the Guidelines in the Instant Matter

Under Pennsylvania state law, an individual convicted of rape of a child with nor prior record faces sentencing guidelines of 90 to 114 months. *See* 18 Pa.C.S. § 3122.1(c). In the instant matter, it is U.S. Probation's position that Mr. Garcia Vazquez's guidelines are 360 months to life. This disparity is not a reflection of proportional punishment; it is a consequence of the mechanical stacking of enhancements that, as discussed above, fail to differentiate among offenders by culpability. Mr. Garcia Vazquez respectfully submits that a Guidelines range exceeding by a factor of three to four times the recommended sentence for rape of a child under

---

commits two acts separated by a day - as occurred here -receives five additional offense levels. The enhancement thus turns on semantics, not on any meaningful measure of the accused's dangerousness, recidivism risk, or culpability. This mechanical trigger is disconnected from the empirical and penological considerations that the Guidelines are supposed to reflect. *See Kimbrough v. United States*, 552 U.S. 85, 109-10 (2007) (holding that a district court may vary from the Guidelines where the applicable provision does not reflect the Commission's "characteristic institutional role" of empirical analysis).

Pennsylvania law is greater than necessary to achieve any legitimate sentencing objective and warrants a substantial downward variance.

### C) **Mr. Garcia Vazquez's psychological evaluation**

In preparation for sentencing, Mr. Garcia Vazquez was evaluated by Dr. Steven E. Samuel, PhD.[6] Importantly, Mr. Garcia Vazquez made it clear during the evaluation that he takes full responsibility for his actions, expressing true remorse for his actions. In terms of mitigating circumstances, Dr. Samuel noted:

- A cardinal finding taken from Mr. Garcia Vazquez's interview and SCID-5-CV results concerns the presence of intimacy deficits, limited social skills, and a significant lack of interpersonal competence. He would be best described as socially inept and isolated;

- Mr. Garcia Vazquez's SCID-5-CV identified that his social functioning deficits contributed fundamentally to his unlawful sexual conduct, rather than being diagnosed with a DSM-5 Paraphilic Disorder or Pedophilic Disorder;

- Mr. Garcia Vazquez had deep consideration and reflection about the potential harm(s) caused to the minor; and

- Mr. Garcia-Vazquez exhibited true feelings of guilt and remorse based on Dr. Samuel's lengthy experience evaluating sexual offenders, including with Pennsylvania's Sexual Offender's Board.

---

[6] Attached as Exhibit D-2 filed under seal.

While we understand that it will ultimately be up to the Court to decide the level of Mr. Garcia Vazquez's remorse and risk of recidivism, we respectfully submit that Dr. Samuel's findings, based upon his extensive experience, should be given significant weight.

### (D) The shame, embarrassment and collateral consequences of his criminal act

Prior to his criminal actions, Mr. Garcia Vazquez was well respected in his community and among his peers.  Tragically, his poor decision to violate the law caused his life to careen out of control. In today's internet age, Mr. Garcia Vazquez will never be able to escape his actions.  He will wear this conviction like a scarlet letter for the rest of his days. *See United States v. Smith*, 683 F.2d 1236, 1240 (9th Cir. 1982) ("The stigma of a felony conviction is permanent and pervasive.").

The embarrassment he has caused his family and the shame now attached to his name in the community has taught him a harsh lesson that will forever be tattooed on his conscience.  As long as he lives, nothing will ever erase what he has done to his reputation and more importantly, to his family.  We however ask the Court to recognize that the intangible punishment Mr. Garcia Vazquez has received – the shame of his family; the dishonor to his name; diminished prospect of upward career mobility; the destruction of his reputation – are all punishments that, while not meted out by the Court, are very real and extremely relevant.  As recognized by the Courts and former Presidents, the stigma of the intangibles that come with his conviction for a man like Mr. Garcia Vazquez is a punishment that Courts should consider when determining what sentence is appropriate.

Mr. Garcia Vazquez will not re-offend.  While it is true that true repentance is being in the same situation and making a different choice, if given that opportunity Mr. Garcia Vazquez would not choose the same path.  As such, Mr. Garcia Vazquez prays that the Court will consider the

intangible effects of his conviction when fashioning a non-custodial sentence that is sufficient, but not greater than necessary to satisfy the goals of § 3553(a).

### (E)  Mr. Garcia Vazquez's likely deportation

The near-certain deportation of Mr. Garcia Vazquez following the completion of his sentence is a collateral consequence that this Court should consider in fashioning a sentence sufficient but not greater than necessary under 18 U.S.C. § 3553(a). Circuits across the United States have continually considered deportability as a variance factor.[7]  Specifically, 18 U.S.C. § 3553(a)(2) directs sentencing courts to consider the need for the sentence imposed.  In this regard, the statute enumerates the following factors:

(A)     to reflect the seriousness of the offense, to promote respect for the law, and to provide just compensation for the offense;

(B)     to afford adequate deterrence to criminal conduct;

(C)     to protect the public from further crimes of the defendant; and

(D)     to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner.

*Id*.  Deportation necessarily renders at least two of these considerations moot. Following his release from custody, Mr. Garcia Vazquez will be transferred to Immigration and Customs Enforcement's (ICE) custody for removal proceedings.  He will quite literally be a distant memory.  The very fact

---

7 *See United States v. Thavaraja*, 740 F.3d 253, 263 (2d Cir. 2014) ("[A] district court may take into account the uncertainties presented by the prospect of removal proceedings and the impact deportation will have on the defendant and his family."); *United States v. Flores-Olague*, 717 F.3d 526, 535 (7th Cir. 2013) ("A sentencing court is well within its prerogatives and responsibilities in discussing a defendant's status as a deportable alien."); *United States v. Morales-Uribe*, 470 F.3d 1282, 1287 (8th Cir. 2006) ("Arguably, the need to protect the public from a defendant may be reduced in a case where, upon immediate release from incarceration, the Government will deport the defendant.").

he will not be in this country is protection for the public enough, and U.S. resources would be better spent on the rehabilitation of those bound to re-enter U.S. society in the future.

Furthermore, Mr. Garcia Vazquez most respectfully submits that the intangible punishment of a lifetime of separation from his family is harsher than any other punishment that this Honorable Court can mete out. The Supreme Court has recognized that deportation is "a particularly severe penalty," constituting a "drastic measure" that may be "the equivalent of banishment or exile." *Padilla v. Kentucky*, 559 U.S. 356, 365-66 (2010) (internal quotation marks omitted). As Dr. Samuel's report indicates, Mr. Garcia Vazquez has no family or support system in Mexico; Mr. Garcia Vazquez's mother posits that he will be unsafe in Mexico. Deportation itself functions as a significant additional punishment beyond incarceration as it is a permanent banishment from the country in which he has grown up in since he was four (4), severing every social, economic, and familial tie he has established. Indeed, while Mr. Garcia Vazquez does not seek to cast blame elsewhere, he most respectfully asks the Court to take into consideration the intangible punishments he faces if deported.

We therefore most respectfully ask that the Court take the intangible effects of Mr. Garcia Vazquez's likely deportation into account.

## VI.    CONCLUSION

Based on the above arguments and the law cited, we respectfully request that this Court impose a sentence far below the guideline range of 360 months to life in this matter.

**Respectfully submitted**,

*/s/ Michael J. Diamondstein*

**MICHAEL J. DIAMONDSTEIN**
**Attorney for Brayan Yael Garcia Vazquez**
Suite 1815
Two Penn Center
1500 John F. Kennedy Boulevard
Philadelphia, Pennsylvania 19102
(215) 940-2700

17

## CERTIFICATE OF SERVICE

Michael J. Diamondstein, Esquire being duly sworn according to law, deposes and says that on the **19th** day of **March, 2026** a copy of the within document was served upon the following individuals via email:

**The Honorable Malachy E. Mannion**
U.S. District Judge
Sylvia H. Rambo United States Courthouse
1501 North 6th Street
Harrisburg, PA 17102

**Michael Scalera, AUSA**
Sylvia H. Rambo United States Courthouse
1501 North 6th Street
Harrisburg, PA 17102

**Clerk's Office**
Sylvia H. Rambo United States Courthouse
1501 North 6th Street
Harrisburg, PA 17102

**Rebekah L. Billings, USPO**
United States Probation
Harrisburg, PA
**Via Email**

*/s/ Michael J. Diamondstein*
**MICHAEL J. DIAMONDSTEIN**
**Attorney for Brayan Yael Garcia Vazquez**

18